UNITED STATES of America, Plaintiff,

v.

Alfred J. LUCIANO, Alfred A. Luciano, Gordon H. Ochenrider, William A. Douglas, Edwin Elgersma, Robert E. Serry, Carlos Arcila, Juan Diego Arcila, Karen Wollman, Defendants.

No. CR 91–1–M–CCL.

United States District Court, D. Montana, Missoula Division.

Dec. 19, 1991.

Carl Rostad, Asst. U.S. Atty., Great Falls, Mont., for plaintiff.

Michael Cotter, Great Falls, Mont., Stephen L. Farnell, Robert H. Whaley, Spokane, Wash., for defendants.

## OPINION AND ORDER

LOVELL, District Judge.

Defendant Luciano moves the court for an order suppressing evidence seized by the government pursuant to a search warrant issued January 24, 1990. Defendant bases his motion on three grounds. First, Defendant contends that the search warrant was issued as a result of Agent Steven J. MacKinnon's intentional or reckless misrepresentations of the facts known to him to the United States Magistrate Judge, Robert M. Holter. Second, that the affidavit of Agent MacKinnon fails to state sufficient facts to establish probable cause that a crime had been committed, or was being committed by Alfred J. Luciano. Finally, Defendant contends that the application for search warrant fails to set forth with specificity pursuant to Rule 41(b) Federal Rules of Criminal Procedure, the property that constitutes evidence of a crime, contraband, or property designed or intended for use in a criminal offense.

Based on the foregoing contentions, Defendant requested a *Franks* hearing to determine the validity of the affidavit supporting the search warrant. The United States stipulated to the hearing which was held on December 16, 1991.

## BACKGROUND

The search warrant at issue in this case was executed by United States Customs agents on January 25, 1990, on the premises of a commercial entity known as The Land Store in Eureka, Montana. At the time of the search, The Land Store was a sole proprietorship, owned by Alfred A. Luciano, one of the Defendants in this case. The building searched was described in the warrant as a brown, two story commercial building clearly marked with a diamond shaped logo reading "Land Store." In addition to The Land Store, various records of approximately thirty separate business entities were housed in the building described in the warrant at the time of the search. Though Defendant Alfred J. Luciano (Alfred A. Luciano's father) had an interest in some of these entities, Alfred A. Luciano had no interest in any of the entities except The Land Store itself.

During the search, the officers seized approximately 20,000 documents which included accounting and tax records, correspondence, attorney correspondence, news letters, banking records, credit card records, loan records, payroll information, and expense records. Files were searched pertaining to all of the business entities housed in the building, not just those pertaining to The Land Store.

## DISCUSSION

Defendant contends that the affidavit contained misrepresentations which Agent MacKinnon either knew were false or should have known to be false. Defendant supports this contention with the following examples of statements found within the affidavit.

First, MacKinnon stated that he had received an affidavit from Special Agent Donald Bambenek in Florida concerning safe deposit box 840 located at the Mountain Bank in Whitefish, Montana. That affidavit was in support of Bambenek's belief that the safe deposit box contained evidence of crimes against the United States because the key to the box had been found in the possession of Edwin Elgersma. Regarding Bambenek's assertions concerning the safe deposit box, Agent MacKinnon stated: "Special Agent Donald Bambenek states the following: (see at-

tached affidavits of Special Agent Donald Bambenek.)" However, nothing in the attached affidavit of Bambenek refers to safe deposit box 840. Defendant claims that the representation of MacKinnon that information relating to the safe deposit box was in the attached affidavit was a false and intentional misrepresentation.

Though the Bambenek affidavit attached did not contain any reference to safe deposit box 840, the court notes that the warrant at issue in this case did not pertain to the safe deposit box. The safe deposit box had already been the subject of another search warrant which was executed on February 13, 1989. Therefore, though MacKinnon did not actually attach the affidavit relating to the safe deposit box, that fact is immaterial as the Magistrate Judge was not concerned with the validity of the search of that safe deposit box, but with the evidence already found therein.

The evidence seized from the safe deposit box included 30 shares of Rocky Mountain Land and Cattle Company stock in 5 share certificates. The certificates were signed by Alfred A. Luciano as the issuer. MacKinnon stated in his affidavit that the certificates were not "countersigned and therefore in bearer form. As the key ... was found in the possession of Edwin Elgersma, he was the de facto owner of the 30 shares." Defendant claims that this was a false representation because the issue of these shares was litigated in United States District Court for the District of Florida in the case, *United States v. Thirty Shares of Stock in the Rocky Mountain Land and Cattle Company.* At this proceeding it was held that the shares of stock were in non-bearer form and non-transferable.

Because Defendant chose not to examine Agent MacKinnon on this or any other matter, it is impossible to know what knowledge MacKinnon had in regard to the legal status of the shares of stock found in the safe deposit box. However, regardless of the legal status of that stock, the fact that Elgersma had it in his possession evidences a connection between him and the Rocky Mountain Land and Cattle Company.

Defendant also takes exception to MacKinnon's further representation that Elgersma was a thirty percent owner of the Rocky Mountain Land and Cattle Company and therefore a thirty percent owner of the Cadillac Casino. Defendant contends that if no transfer of stock was possible based upon the certificates themselves, then Elgersma could not be a thirty percent owner of Rocky Mountain Land and Cattle Company or the Cadillac Casino.

This is simply a continuation of the previous allegation. What MacKinnon knew or did not know regarding the legal status of the stock at the time he submitted his affidavit was not determined at the hearing. Therefore, the court will accept Agent MacKinnon's contention that he was unaware of the nontransferability of the stock certificates. Again, regardless of the legal status of the stock, Elgersma's possession of that stock reasonably indicates a connection between him and the Rocky Mountain Land and Cattle Company, which owned the land on which the Cadillac Casino was built as well as the temporary liquor license under which the Cadillac operated.

Defendant also maintains that MacKinnon intentionally misrepresented his connection with The Land Store. Defendant Alfred J. Luciano claims that the government knew that he had no ownership or proprietary interest in The Land Store by October of 1986. Though MacKinnon states in his affidavit that Alfred A. Luciano "assumed control of The Land Store from his father around January 1, 1987," he goes on to state that "both partners in The Land Store have substantial involvement in any scheme relating to the financing of Rocky Mountain Land and Cattle Company." Therefore, at the time the affidavit was submitted, MacKinnon represented to the Magistrate Judge that Alfred A. Luciano and Alfred J. Luciano were still partners in The Land Store. Because Agent MacKinnon was not examined at the hearing as to his knowledge concerning the ownership and control of The Land Store, the court has no basis on which to find that Agent MacKinnon knew or should

have known that The Land Store was solely owned by Alfred A. Luciano. Based on his representations in the affidavit which he affirmed through government counsel during the hearing on this matter, the court finds that Agent MacKinnon believed, based on his investigations, that Alfred J. Luciano maintained a proprietary interest in The Land Store and that he exercised some control over its business affairs.

Defendant also claims that the affidavit falsely asserted that "constant consultation" took place between Alfred senior and his son regarding the Cadillac. Defendant contends that the affidavit itself only referred to two consultations between Alfred J. and Alfred A. Luciano and that the phrase "constant consultation" was a deliberate attempt to connect Alfred J. Luciano with his son's enterprises.

The fact that the affidavit referred to only two meetings between Alfred J. and Alfred A. Luciano does not in itself make Agent MacKinnon's assertions about Alfred J. Luciano's consultations false or misleading. Certainly, an investigating officer cannot be expected to include the sum total of all of his investigation in the affidavit supporting a search warrant. The two meetings referred to in the affidavit form part of a short summary of events in July, August, and September of 1988 concerning progress on the Cadillac. Because Agent MacKinnon was not examined on this matter, the court does not know whether this was intended to be an exhaustive list of the meetings between Alfred J. and Alfred A. Luciano concerning the Cadillac, or merely a list of highlights. However, regardless of the actual number of meetings between Alfred J. and Alfred A. Luciano concerning the Cadillac, the term "constant consultation" is relative and conclusory in nature, and merely represents the agent's interpretation of the information he had discovered in his investigation.

Based on the foregoing, the court finds that the affidavit of Agent MacKinnon did not contain any intentional or reckless misrepresentations of facts to the United States Magistrate Judge who ultimately issued the search warrant.

Defendant also claims that no probable cause existed for the issuance of a search warrant because, he contends, the government failed to establish a nexus between the items to be seized and criminal behavior.

Probable cause "is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527, 544 (1983). Probable cause is to be determined under a "totality-of-the-circumstances" test and

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Id.* 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. (citation omitted).

The court finds, based on its review of the affidavit submitted to the Magistrate Judge by Agent MacKinnon, that the Magistrate Judge did have a substantial basis for concluding that probable cause existed for the search of The Land Store. The affidavit set forth evidence of direct connections between the Florida narcotics traffickers, Edwin Elgersma and Robert Serry, and Alfred A. Luciano. It also presented evidence connecting Elgersma and Serry to the Cadillac Casino. The affidavit further set out evidence linking Alfred J. Luciano with the construction of the Cadillac. Additionally, the affidavit presented evidence of Alfred J. Luciano's involvement in Montana Precision Mining which had allegedly been used to bribe bank officers. Therefore, the court finds that the Magistrate Judge was presented with enough evidence in the affidavit to form a substantial basis for concluding that there was a fair probability that business files located in The Land Store, which was believed to be joint-

ly managed by Alfred A. Luciano and Alfred J. Luciano, contained evidence of an ongoing conspiracy to launder money and commit bank fraud.

■ Finally, Defendant contends that the warrant was too general in its description of items to be seized. As previously stated, the government executed a search warrant on the premises in which The Land Store conducts business. However, in the same building in which The Land Store conducts its affairs, there are records of at least thirty separate business entities as well as personal files belonging to Alfred J. Luciano. Though Alfred J. Luciano has an interest in many, but not all, of these other businesses, Alfred A. Luciano had an interest in only The Land Store itself.

The property to be seized was described in a one page attachment to the search warrant which made no reference to property or documents pertaining to any specific entity, or the records of Alfred J. Luciano personally. The only items described with particularity were documents relating to Robert Serry and Edwin Elgersma. Defendant contends that the warrant was unduly broad in that it authorized a general search of the premises without giving specific authorization to search the personal records of Alfred J. Luciano or those belonging to the thirty entities doing business at the location known as The Land Store.

The Warrant Clause of the Fourth Amendment prohibits the issuance of any warrant except one "particularly describing the place to be searched and the persons or things to be seized." In this case, the warrant included an address and described the building to be searched as one with a sign on its exterior designating the building as The Land Store. The fact that files concerning other business entities were in the building does not make the description in the warrant invalid. The warrant did adequately describe the premises to be searched. However, the question remains as to whether the warrant could effectively authorize the executing agents to search files belonging to business entities other than The Land Store. The court finds that it could.

On the basis of the warrant, the executing agents were authorized to search for any documentary evidence on the premises relating to any scheme to disguise the source or control of proceeds of unlawful activity. When the affidavit in support of the search warrant application was submitted, the investigative agent was unaware that the building to be searched contained the files of some thirty different entities. The issue is whether this factual mistake invalidates a warrant that probably would have been valid had it reflected an accurate understanding of the business records contained on the premises.

In *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987), police officers obtained a warrant to search "premises known as 2036 Park Avenue third floor apartment." The police did not realize that the premises consisted of two apartments rather than just one. In conducting the search of the premises, the police inadvertently entered the apartment of Garrison rather than that of the target of the search and found drugs belonging to Garrison. The Supreme Court held that the search was valid and refused to suppress the evidence upon a finding that the police neither knew nor should have known that there were two apartments on the third floor. In so holding, the Court stated that:

Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not the warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the war-

rant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate.

*Id.* 480 U.S. at 85, 107 S.Ct. at 1017, 94 L.Ed.2d at 81.

Because the investigating agent in this case neither knew nor had reason to know that the building designated as The Land Store contained records pertaining to some thirty different entities, the court finds, based on the holding of *Maryland v. Garrison,* that the warrant was valid despite the subsequent discovery of facts demonstrating insufficient particularity.

■ Defendant also contends that the description of the items to be seized did not fulfill the requirements of Rule 41 of the Federal Rules of Criminal Procedure. Rule 41(b) states that a warrant may be issued only for (1) property that constitutes evidence of a crime; (2) contraband, fruits of a crime, or things otherwise criminally possessed; (3) property designed or intended for use or which has been used as a means of committing a criminal offense; and (4) persons for whose arrest there is probable cause. Defendant claims that the warrant did not describe the property to be seized as either being evidence of a crime or as contraband, but merely stated that it was to be seized. Defendant also claims that the warrant did not say that the property to be seized was related to any particular violation of the law. However, these claims are without merit. The warrant clearly stated under paragraph eight of the attachment that the property to be seized was "[a]ll documentary evidence ... relating to any 'scheme to disguise the source, ownership, location, nature or control of proceeds of unlawful activity." Therefore, the warrant did describe the property to be seized as property constituting evidence of a crime and did relate such property to a particular criminal activity.

■ Defendant also contends that the warrant was too broad because it did not adequately limit the types of property which could be seized. However, it is unlikely that the government could have described the items to be seized with any greater particularity than it did considering the information it had at the time the warrant was issued as well as the nature of the crimes alleged. The very purpose of money laundering is to disguise the proceeds of unlawful activity by investing them in legitimate business enterprises. Property constituting evidence of laundering activities cannot easily be discerned from property with no relationship to the activity. Therefore, by necessity, the scope of the search in a case such as this must be greater than that allowed in other crimes where property constituting evidence is more readily distinguishable from unrelated property.

■ Additionally, the fact that most of the documentation seized does not relate to Robert Serry or Edwin Elgersma does not affect the validity of the warrant and search. Though the executing officers were authorized to particularly search and seize documents concerning those two individuals, the warrant in no way limited the search to only documents concerning Serry and Elgersma. Again, the last paragraph of Attachment A of the warrant stated that all documentary evidence relating to any scheme to disguise the source of the proceeds of unlawful activity was to be seized. Therefore, the Serry/Elgersma limitation suggested by Defendant did not exist on the face of the warrant.

■ Finally, as discussed above, under *Maryland v. Garrison,* the fact that records belonging to entities other than The Land Store were searched and seized does not invalidate the warrant. Because the warrant was validly issued, the subsequent discovery of previously unknown records constituting evidence of a crime cannot work to retroactively require a specific finding of probable cause as to any of the entities housed in The Land Store. Though inadvertently discovered, such property seized which constitutes evidence of a crime will not be suppressed.

■ One final topic that must be discussed concerns the claims that correspondence protected by attorney-client privilege

was seized. While the privilege certainly protects Defendant from the use of such correspondence as evidence at trial, it does not affect the validity of the warrant and search. The privilege concerns the admissibility of evidence, not the scope of searches. Executing agents are not required to assess the ultimate admissibility of evidence seized. *See United States v. Weigand*, 812 F.2d 1239, 1243 (9th Cir. 1987).

Based on the foregoing analysis, the court finds that the warrant issued on January 24, 1990, pertaining to The Land Store was based on probable cause, contained an adequate description of the premises to be searched, and was limited in scope to the extent possible under the circumstances. Accordingly,

IT IS HEREBY ORDERED that Defendant Alfred J. Luciano's motion to suppress evidence is DENIED.

The clerk is directed forthwith to notify counsel of entry of this order.