**UNITED STATES of America,**

v.

**Dwight Edwin WHORLEY, Defendant.**

**No. CRIM. 305CR114HEH.**

United States District Court,
E.D. Virginia,
Richmond Division.

Dec. 7, 2005.

Sara Elizabeth Flannery, Office of the U.S. Attorney, Richmond, VA, Damon A. King, U.S. Department of Justice, Washington, DC, for Plaintiff.

Frank W. Dunham, Jr., Robert James Wagner, Office of the Public Defender, Richmond, VA, for Defendant.

### MEMORANDUM OPINION

**(Granting Defendant's Motion to Allow Expert Testimony of Comparable Literature and Testimony Regarding Lasciviousness)**

HUDSON, District Judge.

THIS MATTER is before the Court on Defendant's motion to allow the fact testimony of Dr. Susann Cokal and Dr. Howard Risatti and the expert testimony of Dr. Susann Cokal. Both parties have submitted memoranda of law in support of their respective positions. After reviewing the memoranda filed by both sides, the Court ruled on November 28, 2005 that Defendant's experts may testify pursuant to the limitations discussed below.

### I. Background

This case arises from Defendants' prosecution for a variety of charges stemming from his use of an interactive computer service to send and receive obscene matters including anime cartoons and e-mails involving depictions of children engaging in sexually explicit behavior. For the purposes of this motion, the relevant counts are 41–55 (Receipt of Obscene Material Depicting the Exploitation of a Minor under 18 U.S.C. § 2252(a)(2)) and 56–75 (Im-

portation of Obscene Matters pursuant to 18 U.S.C. § 1462).

On November 22, 2005, this Court held a hearing to address, among other matters, the government's motion to exclude the testimony of Dr. Cokal and Dr. Risatti. Following argument the Court directed counsel for both sides to submit supplemental memoranda of law supporting their respective positions, both sides have done so.

Defendant moves this Court to allow certain photographs as comparative evidence as well as Dr. Risatti's testimony to help establish the comparative factors. Defendant requests that this Court also allow Dr. Cokal's fact testimony regarding sexual themes involving children in literature of "serious literary value" and Dr. Cokal's expert testimony with respect to her experience as an English teacher—specifically, how juvenile sexual content often accompanies the educational experience of literature and creative writing.

The government objects to the introduction of comparative photographs and any expert testimony concerning the history of juvenile nudity in art and whether an image "depicts lewd and lascivious exhibition of a child's genitals."

## II. Analysis

■ Rule 702 of the Federal Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the wit-

ness has applied the principles and methods reliably to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court of the United States interpreted Rule 702 as requiring district courts to perform a gatekeeping function to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589, 113 S.Ct. at 2795. Generally, "the District Court has wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States,* 418 U.S. 87, 108, 94 S.Ct. 2887, 2903, 41 L.Ed.2d 590 (1974). Such evidentiary rulings are reviewed on appeal for abuse of discretion. *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 142–43, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997). Even where, as here, the proffered expert testimony is not scientific, "the district court must still perform the gatekeeping function" to prevent the expert from usurping the role of the jury. *United States v. Hammoud,* 381 F.3d 316, 337 (4th Cir. 2004), *cert. granted, vacated,* —— U.S. ——, 125 S.Ct. 1051, 160 L.Ed.2d 997 (2005), *remanded to and reinstated in part by* 405 F.3d 1034 (2005).

### 1. Dr. Risatti's Testimony

■ 18 U.S.C. § 2252(a)(2) makes it a crime to knowingly receive any image transported via interstate commerce, including by computer, if "the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2252(a)(2)(A). "Sexually explicit conduct" is defined as actual or simulated:

(A) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) bestiality;

(C) masturbation;

(D) sadistic or masochistic abuse; or

(E) lascivious exhibition of the genitals or pubic area of any person.

18 U.S.C. § 2256(2). There being no evidence with regard to Counts 41–55 that subsections (A)-(D) apply, the images at issue depict sexually explicit conduct if they represent "lascivious exhibition of the genitals or pubic area."

In *United States v. Dost*, Judge Thompson of the Southern District of California set forth six relevant but non-exclusive factors in determining a lascivious exhibition:

1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

4) whether the child is fully or partially clothed, or nude;

5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987). Judge Thompson cautioned that "a visual depiction need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." *Id.* Several circuits have either expressly adopted or applied these so-called *Dost* factors. *See United States v. Campbell*, 81 Fed.Appx. 532, 536 (6th Cir.2003) ("[A]long with any other relevant criteria, including the age of the child, these [*Dost*] factors provide a framework for analyzing the image in its entirety."); *United States v. Carroll*, 190 F.3d 290, 297 (5th Cir.1999), *vacated on other grounds*, 227 F.3d 486 (5th Cir.2000) ("We apply the six factor Dost test to determine whether a visual depiction of a minor constitutes an actual 'lascivious exhibition of the genitals or pubic area ....' "); *United States v. Horn*, 187 F.3d 781, 789 (8th Cir.1999) ("In attempting to determine the limits of this category of sexually explicit conduct, we find helpful the six criteria suggested in *United States v. Dost*."); *United States v. Amirault*, 173 F.3d 28, 32 (1st Cir.1999) ("We believe that the *Dost* factors are generally relevant and provide some guidance in evaluating whether the display in question is lascivious."); *United States v. Wolf*, 890 F.2d 241, (10th Cir.1989) (approving the trial court's application of the *Dost* factors); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir.1989) ("We adopt the *Dost* factors as a means of determining whether a genital exhibition is 'lascivious.' We do so, of course, not out of any precedential obligation, but instead because the *Dost* factors provide specific, sensible meaning to the term 'lascivious,' a term which is less than crystal clear.").

The Fourth Circuit has not yet addressed the relevant factors in finding a "lascivious exhibition of the genitals or pubic area." In reviewing the *Dost* factors, they are certainly relevant, though not controlling, to the question of whether a display of a minor's genitals or pubic area amounts to lasciviousness. The Court does not believe, however, that any technical or other specialized knowledge is nec-

essary for the jury to determine whether these factors are present.

As the Ninth Circuit noted in *United States v. Arvin*, 900 F.2d 1385 (9th Cir. 1990), " 'lascivious' is a 'commonsensical term.' " *Id.* at 1390 (quoting *Wiegand*, 812 F.2d at 1243). "[W]hether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make." *Id.* As such, Dr. Risatti may not provide expert testimony on what constitutes a "lascivious display of genitals." Whether poses are lascivious is an exercise in common sense and within the range of common human experience for which the trier of fact needs no enlightenment from an expert. Thus, to the extent Dr. Risatti's expert testimony purports to explain whether an image is lascivious, it fails to meet the level of specialized knowledge required by Rule 702.

■■■■ Dr. Risatti may still present comparative evidence as a fact witness including the photos attached to Defendant's memorandum of law in support of the motion presently at issue. Such testimony may include Dr. Risatti's opinions and inferences as a lay witness to the extent they are relevant and "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." Fed. R. Evd. 701; *see also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir.2000). Dr. Risatti may not, however, utilize images of statues or other art forms such as those included with Defendant's memorandum in support. These sculptures—Michelangelo's David, Donatello's David, and the Manakin Pis—simply are not comparable to the pictures of juveniles at issue when viewed in context of the environment in which the statues were publically displayed. Thus, such evidence, either in the form of pictures or Dr. Risatti's compari-

son, would be irrelevant, confusing and misleading to the jury and is properly excluded. *See* Fed. R. Evd. 403.

### 2. Dr. Cokal's Testimony

■■■ 18 U.S.C. § 1462 criminalizes the importation or transportation via computer of "any obscene ... book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character." 18 U.S.C. § 1462(a). The Supreme Court has struggled to define the key term in this statute, "obscene," without imposing an undue burden on free speech. *See Ashcroft v. ACLU*, 535 U.S. 564, 574, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002). In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court established a three-part test to determine whether material is obscene:

(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and

(c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 93 S.Ct. at 2615 (quotation marks and internal citations omitted). In this case, Defendant's expert intends to offer fact and expert testimony comparing Defendant's emails containing allegedly obscene content with works of literary value such as *Lolita, The Color Purple, Tender is the Night* and *A Diving Rock on the Hudson*. Additionally, Dr. Cokal intends to testify about her experiences as an English literature and creative writing teacher—specifically, how themes of juvenile sexual content often accompany this type of educational experience.

Dr. Cokal's proposed testimony appears to satisfy Rule 702. While the emails in question and the materials submitted for comparison have contrasting language, there is similarity between the content of the two such that a jury could find Dr. Cokal's testify helpful in its analysis. As such, Dr. Cokal is permitted to provide expert testimony on the relevant community standard with respect to counts 56–75; i.e., whether a reasonable person would find that Defendant's emails, taken as a whole, appeal to the prurient interest or lack serious literary value. For the same reasons, Dr. Cokal's fact testimony is admissible provided that it is relevant and satisfies the requirements of Rule 701.

## III. Conclusion

While the demands of Rules 701 and 702 of the Federal Rules of Evidence permit Dr. Risatti's testimony only as a fact witness, Dr. Cokal may give both fact and expert testimony. Accordingly, Defendant's motion to allow expert testimony is granted pursuant to the limitations stated above.

It is so ORDERED.