FILED
United States Court of Appeals
Tenth Circuit

December 16, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY MICHAEL WELLS,

    Defendant - Appellant.

No. 16-8012

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:15-CR-00087-ABJ-1)**

---

Submitted on the briefs:

Wendy Curtis Palen, of Palen Law Offices, LLP, Glendo, Wyoming, for Defendant-Appellant.

Christopher A. Crofts, United States Attorney, Thomas Szott, Assistant United States Attorney, Office of the United States Attorney, Cheyenne, Wyoming, for Plaintiff-Appellee.

---

Before **BRISCOE**, **EBEL** and **MURPHY**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Defendant Timothy Michael Wells appeals from his conviction following a jury trial of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a) and (e), for which he received the mandatory minimum sentence of 180 months' imprisonment.[1] The only issue raised by Wells is whether the jury had sufficient evidence to convict him of sexual exploitation of a child. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[2]

## I

"We review a sufficiency of the evidence challenge de novo, viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." United States v. Rodebaugh, 798 F.3d 1281, 1296 (10th Cir. 2015) (quoting United States v. Hale, 762 F.3d 1214, 1222 (10th Cir. 2014)). "We will reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Hale, 762 F.3d at 1222–23). "In other words, we ask whether 'a reasonable jury could find the defendant guilty.'" Id. (quoting United States v. King, 632 F.3d 646, 650 (10th Cir. 2011)). "In conducting this review we may neither weigh conflicting evidence nor consider the credibility of witnesses. It is for the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences

---

[1] Wells was also convicted by the same jury of attempted coercion and enticement, in violation of 18 U.S.C. § 2422(b); incest, in violation of 18 U.S.C. §§ 7(3) and 13, and Wyo. Stat. Ann. § 6-4-402(a); and abusive sexual contact, in violation of 18 U.S.C. § 2244(b). He does not appeal those convictions.

[2] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

from the facts presented." Id. (quoting United States v. McKissick, 204 F.3d 1282, 1289–90 (10th Cir. 2000)). "That is, 'we owe considerable deference to the jury's verdict.'" United States v. Dewberry, 790 F.3d 1022, 1028 (10th Cir. 2015) (quoting United States v. Mullins, 613 F.3d 1273, 1280 (10th Cir. 2010)).

**II**

In a superseding indictment, a federal grand jury charged Wells with violating 18 U.S.C. § 2251(a) by intentionally producing videos of his then-minor stepdaughter, A.M., which visually depicted her engaged in "sexually explicit conduct" in her bathroom.[3] Specifically, the government charged that at least one of those videos depicts a "lascivious exhibition" of A.M.'s "genitals or pubic area," a category of "sexually explicit conduct." 18 U.S.C. § 2256(2)(A)(v). The sole issue in this appeal is whether a rational jury could have found beyond a reasonable doubt that any of the videos depicts such a lascivious exhibition of A.M.'s genitals or pubic area.

The term "lascivious exhibition" is not defined by statute. See United States v. Wolf, 890 F.2d 241, 243 (10th Cir. 1989). We have adopted a set of six "factors" that, "'among any others that may be relevant in the particular case,'" are used "in determining whether a visual depiction of a minor constitutes a 'lascivious exhibition of the genitals or pubic area'" under § 2256(2)(A)(v). Id. at 244 (quoting United States v. Dost, 636 F.

---

[3] Section 2251(a) of Title 18 of the United States Code states in pertinent part: "Any person who . . . uses . . . any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished as provided under subsection (e), . . . if that visual depiction was produced . . . using materials that have been . . . transported in . . . interstate . . . commerce . . . ." Wells admits that he produced the videos using a laptop computer and a USB drive that were transported in interstate commerce. He also concedes that videotaping A.M. qualifies as having "use[d]" her under § 2251(a), and that she was a minor at that time.

3

Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987)); id. at 245 (adopting the "Dost factors").  Those factors are:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> (4) whether the child is fully or partially clothed, or nude;
>
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and]
>
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Id. at 244 (footnote omitted) (quoting Dost, 636 F. Supp. at 832); see also United States v. Soderstrand, 412 F.3d 1146, 1155 (10th Cir. 2005) (acknowledging the Dost factors).

Wells and the government agree in principle that the Dost factors guide our inquiry. They also agree that the third and fifth factors are not implicated because none of the videos depict A.M. in an unnatural pose or in inappropriate attire, as she is nude in her bathroom, and her actions there suggest neither sexual coyness nor a willingness to engage in sexual activity.  We therefore need not discuss the third or fifth factor.

As Wells concedes, moreover, the absence of those factors is not dispositive.  We held in Wolf that "all six factors need not be present in order to bring the depiction under the proscription of the statute," 890 F.2d at 245, and we did "not hold that more than one Dost factor must be present to constitute a violation of 18 U.S.C. § 2251(a)."  Id. at 245 n.6.  Whether an image depicts a lascivious exhibition of the genitals or pubic area instead turns on the "overall content of the visual depiction."  Dost, 636 F. Supp. at 832.

4

## III

Wells raises three challenges to the jury's finding that the overall content of the videos depicts a lascivious exhibition of A.M.'s genitals or pubic area. First, he suggests that he instead should have been convicted of voyeurism. Second, he argues that A.M.'s actions and state of mind are relevant. Finally, he contends that the evidence does not show he was aroused by the videos or that they are otherwise lascivious exhibitions.

A. *Voyeurism*

Wells suggests that creating the videos was mere voyeurism, not production of child pornography. He is correct that 18 U.S.C. § 1801(a) criminalizes the "intent to capture an image of a private area of an individual without their consent, and knowingly do[ing] so under circumstances in which the individual has a reasonable expectation of privacy . . . ." But he elides a key distinction here between § 1801(a) and § 2251(a).

Specifically, under § 1801(a), a defendant's motive for capturing such an image is not an element of the offense, only his intent to capture that image. In contrast, § 2251(a) only criminalizes capturing "sexually explicit conduct," which in these circumstances implicates whether Wells "intended or designed" the videos to "elicit a sexual response" in himself, an additional element requiring additional proof. <u>Wolf</u>, 890 F.2d at 244 (quoting <u>Dost</u>, 636 F. Supp. at 832). Whether Wells alternatively could have been convicted of violating § 1801(a) does not undermine the jury's decision to convict him of the more serious offense of violating § 2251(a) by using A.M. to produce a lascivious exhibition.

B. *A.M.'s Actions and State of Mind*

Wells contends that we must consider whether A.M.'s behavior shown on the videos or her testimony at trial indicate that she believed (or would have believed, if she

had seen them) that the videos were sexual in nature. To the contrary, in Wolf, we explicitly "rejected the notion that" § 2251(a) "places the onus of lust on the child being photographed." Id. at 245 (citing Wiegand, 812 F.2d at 1244). Rather, a visual depiction of a minor is "a lascivious exhibition because the photographer array[s] it to suit *his peculiar lust*." Id. (quoting Wiegand, 812 F.2d at 1244).

> Further, in Wolf, we agreed with the Ninth Circuit that:

> In the context of the statute applied to the conduct of children, *lasciviousness is not a characteristic of the child* photographed *but of the exhibition* which the photographer sets up for an audience that consists of himself or [like-minded] pedophiles . . . . The picture of a child "engaged in sexually explicit conduct" . . . is a picture of a child's sex organs displayed lasciviously—that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.

Id. (first elision in original, second elision added) (quoting Wiegand, 812 F.2d at 1244). Thus, we held, "a sexually exploitative photograph of a child need not portray the victim in a pose that depicts lust, wantonness, sexual coyness or other inappropriate precocity" for the defendant to be guilty of violating § 2251(a). Id. at 247 (quotation marks omitted).

> Therefore, we do not consider A.M.'s actions or state of mind when evaluating the sufficiency of the evidence against Wells. For example, contrary to Wells's suggestion, it is of no import that A.M.'s "state of undress," which was "consistent with common bathroom activities," indicates that she viewed her own actions as nonsexual. Aplt. Br. at 8. Nor does it matter that A.M. continued to use her bathroom after discovering the video camera Wells installed there. The issue is what Wells thought, not what A.M. thought about the necessity of undressing to shower or use the toilet. See Wolf, 890 F.2d at 245. Further, of course, a minor cannot consent to production of child pornography. Id. at 247 (quoting Wiegand, 812 F.2d at 1245, for the proposition that a child cannot "consent" to

be "treated as a thing").

For the same reason, A.M.'s purported responses to Wells's other actions are irrelevant to reviewing the jury's findings with respect to *his* view of the depictions of A.M. in the videos. And, in any event, A.M. testified that she did not consent to and instead resisted Wells's conduct. Wells's arguments with respect to A.M.'s actions and state of mind are therefore without merit and do not undermine the jury's verdict.

C. *Wells's Actions and Intent*

We have examined all of the evidence presented at trial, none of which Wells objected to then, or objects to here. Wells testified to having intentionally placed a video camera in several locations in A.M.'s bathroom, aimed the camera's lens at A.M.'s toilet or shower, and intentionally set the camera to record any activity. He acknowledged that he transferred those recordings to his laptop computer. Wells also admitted to having culled from that footage all of the videos depicting A.M. naked and, rather than deleting them, having transferred them to a USB drive, which he sequestered in his office. Wells testified that he retrieved those videos of A.M. naked from the USB drive and "reviewed," Trial Tr. at 592, them "once or twice." Id. at 555.

The government discovered forty-six such videos on the USB drive. It offered into evidence four of them and published to the jury excerpts from each one. A.M. is naked in portions of all of those videos. For example, in Government's Exhibit 17.1A, Wells walks into the bathroom while A.M. is in the shower. He appears to lean into the shower. He then adjusts the camera, angling it so as to afford a wider view of the shower. When A.M. emerges from the shower, her genitals are fully visible. Because the camera is perched on a wire rack, near waist level, her genitals are centered in the frame.

7

In Government's Exhibit 17.2A, the camera appears to be situated on the bathroom floor with its lens angled upwards. When A.M. steps out of the shower, because the camera is beneath her and so angled, her exposed pubic area is again near the center of the frame. The other exhibits Wells "reviewed" are similar.

In considering what Wells thought of those videos, under the first Dost factor, the jury reasonably could have considered that the focal point of several of the videos appears to be A.M.'s pubic area. Though Wells did not edit the videos, freeze-frame particular images from them, or zoom in on A.M., he did not have to do so to make his stepdaughter's genitals the focal point of the videos. Rather, he admittedly placed a camera in at least four different locations in the bathroom, always aimed at the toilet and shower, even after he knew that he was capturing video of his stepdaughter naked. By the location and angle at which Wells positioned the camera, A.M.'s pubic area was exposed never more than a few feet from the camera's prying lens. The jury reasonably could have concluded that Wells intended to film A.M.'s pubic area or genitals.

Under the second Dost factor, the jury also reasonably could have concluded that A.M.'s bathroom was a sexually suggestive setting. As the Third Circuit explained when addressing similar conduct in United States v. Larkin, "showers and bathtubs are frequent hosts to fantasy sexual encounters as portrayed on television and in film," such that a bathroom "is potentially as much of a setting for fantasy sexual activity as is an adult's bedroom." 629 F.3d 177, 183 (3d Cir. 2010) (citation omitted). We find the Third Circuit's statement highly persuasive and adopt it. Wells apparently never kissed, groped, or observed A.M. naked in her bedroom, and he did not place the camera there. Instead, he located the camera in A.M.'s bathroom, the very space where he "often" intruded upon

8

her privacy and pulled back the shower curtain to observe her naked. Trial Tr. at 587. The videos of A.M. were filmed in the same environs where Wells "kiss[ed] her in the shower at [age] 17." Id. On this evidence, a reasonable jury could have concluded that, for Wells, A.M.'s bathroom was a sexually suggestive locale.

Under the fourth Dost factor, that A.M. is nude in the videos further contributes to the conclusion that these videos were lascivious exhibitions of her genitals. Wells concedes as much when he admits that A.M. was naked in some of the videos. The video excerpts shown to the jury confirm this. A single lascivious exhibition is sufficient to support a conviction under § 2251(a), so it is of no moment that Wells also captured hours of footage depicting A.M. clothed.

As to the sixth Dost factor, the jury reasonably could have considered whether the visual depictions of A.M. naked were intended or designed to elicit a sexual response in Wells. Wells testified "[t]here was no arousal" when he reviewed the videos of A.M. Id. at 554. But sufficient evidence supports the opposite conclusion, and thus his conviction.

Specifically, we first dispense with Wells's specious argument that a jury could not have found he was aroused by the videos because they "do not depict anything beyond what [he] was able to do in 'real life.'" Aplt. Br. at 20. Instead, turning to that real-life, illegal activity, A.M. testified that when she was in the seventh grade, Wells began a series of escalating, unconsented-to sexual overtures. Wells often kissed A.M., grabbed her buttocks, and watched her shower. During her junior and senior years of high school, but while A.M. was still a minor, Wells repeatedly fondled her bare breasts and rubbed her genitals from over her underwear. Wells's actions thus demonstrated his sexual desires.

9

Second, Wells made his sexual intentions clear to A.M. According to A.M., when she was in the seventh grade, Wells showed her an image of a naked teenaged girl on his computer. He also sent A.M. text messages professing that he was "so in love with" her. Trial Tr. at 287. A.M. testified that Wells acted coldly toward her when she spurned his advances, including hitting her after she bit his tongue in an act of resistance. And whenever A.M. resisted, Wells pushed her to make "progress," id. at 300, toward "letting him do more to" her. Id. at 308.

Finally, Wells's testimony could have led the jury reasonably to conclude that he was aroused by the videos he sequestered on the USB drive for private review. Wells testified that he "could see [A.M.] naked pretty much constantly, and [he] did." Id. at 550. He also admitted that after he knew that he had captured footage of her naked, he repositioned the camera. And he conceded that he did so because of his carnal response to A.M.'s appearance, testifying: "I have beautiful children, I love my children very much, and I—you know, I caught the footage, and eventually, yeah, I did feel like my children are beautiful and, yes, I moved those cameras." Id. at 553. Though Wells testified he did not lust after A.M. until she reached adulthood, he admitted that he came to love her and that he "was hoping" his relationship with A.M. "would progress" in the "direction" of "[e]ventually" having sex with her. Id. at 607. A rational jury could conclude on this evidence that Wells intended the videos to elicit a sexual response in himself.

Considering all of the evidence under the Dost factors and the overall content of the four videos, a rational jury could have concluded beyond a reasonable doubt that each of those videos depicts a lascivious exhibition of A.M.'s genitals or pubic area. Sufficient evidence therefore supports the jury's determination that at least one of those videos

10

depicts A.M., then a minor, engaged in sexually explicit conduct. Therefore, Wells's

conviction of violating 18 U.S.C. § 2251(a) and (e) is AFFIRMED.

11