**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TEL JAMES BOAM,

*Defendant-Appellant.*

No. 21-30272

D.C. No.
4:20-cr-00188-
BLW-1

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, Chief District Judge, Presiding

Argued and Submitted February 9, 2023
Portland, Oregon

Filed May 30, 2023

Before: Mary H. Murguia, Chief Judge, and Danielle J.
Forrest and Jennifer Sung, Circuit Judges.

Opinion by Chief Judge Murguia

# SUMMARY[*]

## Criminal Law

The panel affirmed Tel James Boam's convictions for attempted sexual exploitation of a minor under 18 U.S.C. § 2251(a) and possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).

At trial, the jury heard extensive evidence that Boam placed a hidden camera in his bathroom with the purpose of secretly recording and amassing a collection of nude videos of his then fourteen-year-old stepdaughter, T.A.

Boam asserted that there was insufficient evidence to support his convictions.

He argued that he did not attempt to employ, use, persuade, induce, or entice T.A. in a manner that violates § 2251(a). Based on a review of the evidence in the light most favorable to the government, the panel concluded under this court's caselaw that there was sufficient evidence for a rational jury to find that Boam attempted to "use" T.A. in violation of § 2251(a).

Boam also argued that there was insufficient evidence from which a reasonable jury could conclude that the videos meet the statutory requirement of "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2)(A)(v), which applies to both §§ 2251(a) and 2252A. Under both statutes of conviction, "sexually explicit conduct" is defined, in relevant part, as a "lascivious exhibition" of a person's

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"genitals" or "pubic area." Boam mainly contended that the videos are not lascivious exhibitions of T.A.'s genitals or pubic area because the videos are "strictly hygienic" and "not sexual in nature." Based on its review of the videos, and using as guideposts the factors set forth in *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), the panel concluded that the district court did not clearly err in finding that the videos reasonably fell within the definition of sexually explicit conduct. The panel wrote that the district court did not clearly err in determining that a reasonable jury could find (1) that the focal point of the videos was on T.A.'s genitals or pubic area, (2) that T.A. is fully nude in the videos, and (3) that the videos were intended or designed to elicit a sexual response in the viewer. The panel reached the same result under a de novo review of the sufficiency of the evidence.

The panel addressed Boam's other challenges to his convictions and sentence in a concurrently filed memorandum disposition.

---

## COUNSEL

Robin D. Dunn (argued), Dunn Law Offices PLLC, Rigby, Idaho; Stephen S. Hart, Hart Law Office PC, Idaho Falls, Idaho; for Defendant-Appellant.

Justin K. Paskett (argued) and John C. Shirts, Assistant United States Attorneys; Joshua D. Hurwit, United States Attorney, District of Idaho; Office of the United States Attorney; Pocatello, Idaho; William M. Humphries, Assistant United States Attorney; Office of the United States Attorney; Boise, Idaho; for Plaintiff-Appellee.

## OPINION

MURGUIA, Chief Circuit Judge:

Defendant-Appellant Tel James Boam was convicted by a jury of sixteen counts of attempted sexual exploitation of a minor under 18 U.S.C. § 2251(a), and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).  At trial, the jury heard extensive evidence that Boam placed a hidden camera in his bathroom with the purpose of secretly recording and amassing a collection of nude videos of his then fourteen-year-old stepdaughter.  Boam asserts there was insufficient evidence to sustain his convictions, arguing on appeal (1) that he did not "use" his stepdaughter in a way that violates § 2251(a), and (2) that the videos did not depict "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2)(A)(v), which applies to both §§ 2251(a) and 2252A.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm Boam's convictions.[1]

## I.   Factual Background[2]

Boam married Melinda Scott in 2012, becoming the stepfather to Scott's two children, including T.A.  Between approximately 2012 and 2019, Boam and Scott lived together with their children.

---

[1] Boam raises several other challenges to his convictions and sentence that are addressed in a memorandum disposition filed concurrently with this opinion.

[2] Because we are reviewing for sufficiency of the evidence, we lay out the evidence in the light most favorable to the government.  *See United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (explaining the standard of review for challenges to the sufficiency of the evidence).

Scott testified at Boam's trial that in the fall of 2019, she was searching through Boam's iPhone without his knowledge when she noticed a phone application that she did not recognize. She clicked on the app and discovered thumbnail images with dates and times next to them. Scott could tell that the images were nude videos of T.A. in the master bathroom of their home. Scott confronted Boam about the videos, who told Scott that "it was a mistake" and that Scott "was making a big deal [out] of it."

Soon after, Scott reported the videos to law enforcement, who secured search warrants for Boam's phone and other electronic devices. Law-enforcement officers could not get into Boam's phone without a passcode, so they also got a search warrant for his Apple iCloud account.

A computer forensic agent from the Department of Homeland Security testified that the search of Boam's iCloud account revealed thirty-seven videos of T.A. recorded in the master bathroom between June and August 2018. The iCloud data showed that the videos were associated with both the iPhone 6 that Boam had in the summer of 2018 when the videos were recorded, and the iPhone XR that Boam had in the fall of 2019 when Scott discovered the videos. Every single video showed T.A.— who at that time was fourteen years old—in various stages of undress: T.A. was completely nude in thirty-six of the videos, and she was wearing a sports bra in the thirty-seventh video.[3] Although people other than T.A. regularly used the master bathroom, the videos in Boam's iCloud account only showed T.A.

---

[3] Boam was charged only for the nude videos, not the sports-bra video.

The videos—which the government showed to the jury at trial—prominently feature T.A. when she is fully nude before, during, and after showering. The camera is positioned close to the shower, framing the shower as the center of the shot. T.A. is generally in the center of the videos, and her genitals and pubic area are visible and exposed to the camera as she showers and otherwise uses the bathroom. Because the shower curtain is transparent, T.A.'s nude body remains visible when she is showering.

Boam and Scott's house had three bathrooms that contained showers. T.A. testified that during the summer of 2018, Boam "always" instructed her to shower in the master bathroom located through a closet in Boam and Scott's bedroom. T.A. did not know then that she was being filmed and was "shocked" and "overwhelmed" when law-enforcement officers later informed her about the videos.

Law enforcement testified that the videos were recorded using a secret camera that looked like a phone charger, which could be motion-activated or switched on manually. Boam's Amazon account showed that this type of camera was purchased in May 2018, and that it was shipped to Boam's address in his name in early June 2018.[4] The earliest-dated videos of T.A. found in Boam's iCloud account were recorded just days after the purchase. The camera worked by sending data wirelessly to a cellphone via an app called BVCAM (the app that Scott initially noticed

---

[4] The actual camera that created the videos was not introduced at trial. Scott testified that at some point after the summer of 2018 she noticed a black device plugged into the bathroom outlet that she believed to be a phone charger. Concerned that an electrical device was too close to the sink, Scott unplugged it and tossed it into the bathroom closet. The camera was never recovered.

on Boam's phone).  BVCAM permits the user to watch a live video feed, as well as record and store videos.  BVCAM had been downloaded onto Boam's iPhone 6 and his iPhone XR, and the videos of T.A. were saved in folders within the app.

To prove Boam's motive, opportunity, intent, or absence of mistake or accident, the government presented "other act" evidence under Federal Rule of Evidence 404(b)—primarily through testimony from T.A.—that Boam attempted to rape T.A. in November 2018 and that he did rape her sometime in 2019.[5]  T.A. testified and was cross-examined about the alleged attempted rape and rape.  Scott's trial testimony, as well as other government evidence, corroborated various parts of T.A.'s testimony.

Boam testified at trial and denied all allegations related to the offenses charged and the Rule 404(b) evidence.  He said that he had never viewed the videos of T.A. and did not know they were on his phones.  He admitted ordering a camera and plugging it into the outlet in the master bathroom but claimed that he did so for innocuous reasons and at Scott's request.  Boam testified that Scott asked him to order a hidden camera for their bathroom out of concern that a third party was stealing prescription medicine from the medicine cabinet.  According to Boam, he and Scott installed the camera together to find out who was stealing the medicine.  Boam testified that Scott was present when Boam ordered, opened, and set up the camera.  Scott, however, denied any involvement in the purchase or installation of the camera.

---

[5] Boam objected to the Rule 404(b) evidence and challenged its admission on appeal.  We affirm the admission of that evidence in the simultaneously filed memorandum disposition.

After the government's case-in-chief and again at the close of all evidence, Boam moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. Among other things, he argued that the government's evidence was insufficient to allow a reasonable jury to find that Boam caused T.A. to engage in sexually explicit conduct. Construing the evidence in the light most favorable to the government, the district court observed that the circumstantial evidence was "strong" and "almost overwhelming" and concluded that the government had presented sufficient evidence for a jury to convict Boam.

The jury convicted Boam on all counts. The district court sentenced Boam to a term of forty-five years imprisonment: thirty years for each of the sixteen counts of attempted sexual exploitation of a minor, to be served concurrently; and fifteen years for the count of possession of child pornography, to be served consecutively.

## II.      Standard of Review

We review de novo a district court's denial of a Rule 29 motion for acquittal based on sufficiency of the evidence. *United States v. Gonzalez*, 528 F.3d 1207, 1211 (9th Cir. 2008). Sufficient evidence exists to support a conviction if the evidence, "viewed in the light most favorable to the government, . . . would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) (citation omitted). But the "question of whether the [videos] fall within the statutory definition [of sexually explicit conduct] is a question of fact as to which we must uphold the district court's findings unless clearly erroneous." *United States v. Overton*, 573 F.3d 679, 688

(9th Cir. 2009) (citing *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987)).

## III.    Analysis

Boam was convicted of sixteen counts of attempted sexual exploitation of a minor under 18 U.S.C. § 2251(a), and one count of possession of child pornography under 18 U.S.C. § 2252A(a)(5)(B).  Section 2251(a) provides, in pertinent part:

> Any person who employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . shall be punished . . . .

And § 2252A(a)(5)(B) makes it a federal crime to:

> knowingly possess[], or knowingly access[] with intent to view, any . . . videotape . . . or any other material that contains an image of child pornography . . . .

Child pornography means "any visual depiction" where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2256(8)(A).  As relevant to both statutes of conviction, Congress defined "sexually explicit conduct" to include a "lascivious exhibition" of a person's "anus, genitals, or pubic area."  18 U.S.C. § 2256(2)(A)(v).

On appeal, Boam challenges the sufficiency of the evidence.  First, he contends that he did not attempt to employ, use, persuade, induce, or entice T.A. in a manner

that violates § 2251(a).  Second, he argues that the videos of T.A. did not depict "sexually explicit conduct" under §§ 2251(a) or 2252A(a)(5)(b) because the videos did not contain lascivious exhibitions of T.A.'s genitals or pubic area.  We reject both arguments and address each in turn.

## A.  The "Use" Element of 18 U.S.C. § 2251(a)

The first issue on appeal centers on whether there was sufficient evidence to support Boam's convictions for attempting to "use" T.A. in a way that violates § 2251(a). Viewed in the light most favorable to the government, the evidence presented at trial showed that Boam put a secret camera in his bathroom with the intent of filming T.A. when she was naked and showering, and that Boam instructed T.A. to shower in the bathroom with the camera.  Under our caselaw, this evidence is sufficient to support a finding that Boam attempted to "use" T.A. in violation of § 2251(a).

We, along with our sister circuits, "broadly" interpret the "use" element of § 2251(a).  *United States v. Laursen*, 847 F.3d 1026, 1033 (9th Cir. 2017) (citing cases).  In *Laursen*, we adopted the "plain meaning" of the term "use" in the context of § 2251(a) and explained that "use" means "to put into action or service," "to avail oneself of," or to "employ." *Id.* at 1032 (quoting Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/use).    Based on this interpretation, we concluded that evidence that a defendant "directed" a sixteen-year-old girl to take nude photos with the defendant by telling her that "the two 'looked good together' and that 'he wanted to take pictures'" sufficiently established that the defendant used or employed the girl.  *Id.* at 1032–33.  We reasoned that a defendant's "active conduct alone suffices to sustain a conviction under § 2251(a)."  *Id.* at 1033.

Last year, we applied *Laursen*'s reasoning to a case similar to this one. *See United States v. Mendez*, 35 F.4th 1219 (9th Cir. 2022). In *Mendez*, a defendant was convicted of attempted sexual exploitation of a minor based on evidence that he inserted a camera into the eye of a stuffed animal, placed the stuffed animal in the bedroom of his girlfriend's fourteen-year-old daughter, and recorded the girl "without her knowledge or participation." *Id.* at 1220–21. We held that § 2251(a) "encompasses . . . surreptitious filming" and that placing a hidden camera in the girl's bedroom to produce a visual depiction was active conduct that satisfied the "use" element in that case. *Id.* at 1221.

Boam tries to evade our precedent by asking us to focus only on evidence favorable to him, which we cannot do. *See United States v. Richter*, 782 F.3d 498, 501 (9th Cir. 2015) (emphasizing that in determining whether there is sufficient evidence to support a conviction, we "may not usurp the role of the finder of fact") (citation omitted). He contends, for example, that the "use" element was not satisfied because he did not intend to film T.A., as purportedly evinced by his testimony that Scott was involved in purchasing and installing the camera. This argument ignores the significant evidence against him, including Scott's testimony disputing Boam's version of events. Under *Laursen* and *Mendez*, the government's evidence about Boam's actions in this case sufficiently demonstrate that Boam attempted to "use" T.A.

Therefore, based on a review of the evidence in the light most favorable to the government, we conclude under our caselaw that there was sufficient evidence for a rational jury to find that Boam attempted to "use" T.A. in violation of § 2251(a).

## B. The "Sexually Explicit Conduct" Element Under 18 U.S.C. §§ 2251(a) and 2252A

Boam next argues that there was insufficient evidence from which a reasonable jury could conclude that the videos meet the statutory requirement of "sexually explicit conduct."  Under both statutes of conviction, "sexually explicit conduct" is defined, in relevant part, as a "lascivious exhibition" of a person's "genitals" or "pubic area."  18 U.S.C. § 2256(2)(A)(v).[6]  Boam mainly contends that the videos are not lascivious exhibitions of T.A.'s genitals or pubic area because the videos are "strictly hygienic" and "not sexual in nature."  We disagree.

Based on our review of the videos, we conclude that the district court did not clearly err in finding that the videos reasonably fell within the definition of sexually explicit conduct.  *See Wiegand*, 812 F.2d at 1244.  We therefore affirm the district court's decision that sufficient evidence existed for a rational jury to find beyond a reasonable doubt

---

[6] To satisfy its burden for the sixteen counts of attempted sexual exploitation under § 2251(a), the government needed only to prove beyond a reasonable doubt that Boam intended to and took a substantial step toward producing lascivious videos.  *See United States v. Soto-Barraza*, 947 F.3d 1111, 1120 (9th Cir. 2020); *accord United States v. Sims*, 708 F.3d 832, 835 (6th Cir. 2013) (holding that non-lascivious videos supported a charge of attempted production of child pornography); *United States v. Johnson*, 639 F.3d 433, 438–39 (8th Cir. 2011) (explaining that the parties' emphasis on whether the videos were lascivious was misplaced given that the case was submitted on an attempt theory).  For the one count of possession of child pornography under § 2252A, the government needed to prove beyond a reasonable doubt that the videos were lascivious exhibitions.  Because we conclude that the district court did not clearly err and that sufficient evidence supported a finding that the videos were lascivious, we need not differentiate between the § 2251(a) attempt counts and the § 2252A completed count.

that the videos contain sexually explicit conduct. We reach the same result under a de novo review of the sufficiency of the evidence. *See Overton*, 573 F.3d at 688 & n.7 (noting that, under both clear error and de novo review, the court's decision to uphold the defendant's §§ 2251(a) and 2252A convictions would be the same).[7]

### 1. The *Dost* Factors

To determine whether a visual depiction is a lascivious exhibition of a person's genitals or pubic area (and thus sexually explicit conduct), we use as "a starting point" a list of six factors, known as the *Dost* factors:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully or partially clothed, or nude;

---

[7] Because "we must view the pictures ourselves" in "deciding whether the district court erred as to the facts," we ordered the government to file the relevant video exhibits ex parte and under seal. *See Wiegand*, 812 F.2d at 1244. We have viewed the videos.

5)  whether the visual depiction suggests
    sexual coyness or a willingness to engage
    in sexual activity;

6)  whether the visual depiction is intended
    or designed to elicit a sexual response in
    the viewer.

*United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir.
2017) (quoting *United States v. Dost*, 636 F. Supp. 828, 832
(S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*,
812 F.2d 1239 (9th Cir. 1987)).   The *Dost* factors "are
neither exclusive nor conclusive," but rather "'general
principles as guides for analysis.'"   *United States v. Hill*, 459
F.3d 966, 972 (9th Cir. 2006) (quoting *Dost*, 636 F. Supp. at
832).   The inquiry must be case-specific and "based on the
overall content of the visual depiction."    *Id.* (citation
omitted).

We first adopted the *Dost* factors in *Wiegand*.   812 F.2d
at 1244.  In *Wiegand*, the defendant was convicted of sexual
exploitation of children based on evidence that the defendant
"pose[d] two girls . . . for photographs focused on their
genitalia."  *Id.* at 1241.  We concluded that the images were
lascivious exhibitions because the "photographer arrayed"
the images of the girl's genitals "to suit his peculiar lust."
*Id.* at 1244.  In so holding, we stated that "lasciviousness is
not a characteristic of the child photographed but of the
exhibition which the photographer sets up for . . . himself
. . . ."   *Id.*   We further explained that an image of a child
engaged in sexually explicit conduct is one "so presented by
the photographer as to arouse or satisfy the sexual cravings
of a voyeur."   *Id.*   Our conclusion was rooted in our
understanding that child pornography is "an assault upon the

humanity of the person pictured, making that person a mere means serving the voyeur's purposes." *Id.* at 1245.

## 2.  Application of the *Dost* Factors

With that in mind, and using the *Dost* factors as guideposts, we turn to the videos in this case.  The district court found that the first, fourth, and sixth *Dost* factors could support a reasonable jury's conclusion that the videos were lascivious.[8]

To begin, we conclude that the district court did not clearly err in determining that a reasonable jury could find that the first *Dost* factor—that the focal point of the videos was on T.A.'s genitals or pubic area—is met.  The video images are clear and not blurry or pixelated.  The camera is positioned so that it directly points at and frames the shower.  T.A.'s naked body is frequently centered in the frame.  Due to the placement of the camera and the close distance between the camera and the shower, the viewer can see T.A.'s full exposed body, including her pubic area, as she is preparing to shower, showering, and drying off after her shower.  A transparent shower curtain only marginally blurs T.A.'s body, making T.A. plainly visible even when she is actively showering.

Notably, there is no dispute that the videos captured T.A.'s genitals; Boam himself admits this.  Though Boam asserts that the videos captured T.A.'s genitals only inadvertently, this is not a case in which there is just a fleeting glimpse of a child's genitals or pubic area.  Instead, there are multiple, prolonged views. *Cf. United States v.*

---

[8] The district court also determined that a reasonable jury could find that the videos satisfied the third *Dost* factor.  Because our conclusion does not depend on this factor, we do not address it.

*Steen*, 634 F.3d 822, 827 (5th Cir. 2011) (per curiam) (explaining that the fact that a girl's pubic region was visible in a video for one-and-a-half seconds "on the far side of the image's frame" did not support a finding that the focal point was the girl's genitals). In most of the videos, T.A.'s genitals or pubic area are visible and unobstructed before, during, and after her showers. And in at least several videos, her genitals or pubic area are highly exposed for substantial periods of time.

Boam's argument that the "primary focus" of the camera was the bathroom's medicine cabinet strains credulity because the shower takes up most of the screen in all thirty-seven videos. The cabinet is hardly visible in the videos and is by no means the focal point; the bottom of the cabinet appears only in the top corner of the frame. Indeed, in one video, T.A. appears to take something out of the medicine cabinet, but the viewer cannot see the contents of the cabinet or what she takes out because the camera is actually focused on the shower.

Boam's assertion that the first *Dost* factor was not met because he did not manually focus or zoom in on T.A.'s genitals or pubic area fares no better. The videos in this case did not require editing or focusing to make T.A.'s genitals or pubic area their focal points: The camera was set up in such a way that it primarily captured T.A.'s nude body. Boam's emphasis on the "stationary" nature of the camera and the lack of video-editing is therefore misplaced. *See United States v. Miller*, 829 F.3d 519, 525 (7th Cir. 2016) ("There is no requirement in [§ 2251(a)] that the creator zoom in on the pubic area."); *United States v. Wells*, 843 F.3d 1251, 1256 (10th Cir. 2016) ("Though Wells did not edit the videos, freeze-frame particular images from them, or zoom in on [the child], he did not have to do so to make his

stepdaughter's genitals the focal point of the videos . . . . By the location and angle at which Wells positioned the camera, [the child's] pubic area was exposed never more than a few feet from the camera[] . . . .").**9**

Next, the district court did not clearly err in finding that the fourth *Dost* factor, which asks whether the child is clothed or unclothed, was "clearly . . . at play."  It is undisputed that T.A. is fully nude in the videos.

Finally, the district court was not clearly erroneous in finding that the videos could meet the sixth *Dost* factor: that the videos were intended or designed to elicit a sexual response in the viewer.  Under this factor, the "apparent motive of the photographer and intended response of the viewer are relevant" and "inform[] the meaning of 'lascivious.'" *United States v. Arvin*, 900 F.2d 1385, 1389, 1391 (9th Cir. 1990); *see also Overton*, 573 F.3d at 689 (concluding that evidence demonstrating that images were "intended and designed to elicit a sexual response in the voyeur" supported a finding of lasciviousness).

Construing the evidence favorably toward the government, we agree with the district court that the government presented ample evidence from which a jury could reasonably find that the videos were intended to elicit a sexual response in Boam.  Evidence showed that, over

---

9 To be sure, evidence that a defendant employed video-editing techniques to focus on a child's genitals or pubic area may support a finding of lasciviousness.  Had Boam done so in this case, a jury could likely have considered that evidence when assessing the videos.  But we have never suggested that such evidence would be necessary for an image to be lascivious.  To the contrary, we have emphasized the need for case-specific inquiries, rather than blanket rules.  *See Hill*, 459 F.3d at 972.

several months, Boam selectively saved nude videos of T.A.
The camera was in the bathroom that directly connected to
Boam and Scott's bedroom. Therefore, if the camera was
motion-activated as Boam argues, it should have captured
scores of instances of Boam and Scott using the bathroom—
yet, the *only* videos found in Boam's iCloud account showed
T.A. when she was nude or partially nude.[10] The fact that
Boam's video collection was curated in this way supports a
jury finding that the videos were designed to sexually arouse
Boam.

Adding to the "intent" or "design" of the videos, T.A.
testified that Boam instructed her to shower in the very
bathroom where he had placed the secret shower-facing
camera. Moreover, the Rule 404(b) evidence reflected
Boam's sexual interest in T.A.; T.A. testified that Boam
attempted to rape her a few months after the videos were
recorded and that he did rape her a few months after that.

Attempting to distinguish *Wiegand*—the case in which
we first explained that lasciviousness is not a characteristic
of the child, but rather the exhibition the photographer sets
up for himself—Boam attacks the evidence against him. He
contends that, though there was evidence in *Wiegand* "for
the jury to find that the defendant had intentionally
photographed the minors for his own lust," there was not
enough evidence in this case to show that Boam intentionally
recorded T.A., let alone for his own lust. As previously

---

[10] The camera could record videos manually or by motion sensor. Either
recording technique supports the government's case that Boam
intentionally recorded and possessed the videos of T.A. On the one
hand, he could have manually recorded videos of T.A. and T.A. only, or
on the other hand, he could have purposefully saved only the videos of
T.A., deleting all the others.

discussed, this is not true.[11]  The evidence, viewed in the light most favorable to the government, could reasonably demonstrate that Boam intentionally recorded and saved nude videos of T.A. for his sexual arousal.

That said, it is true that this case is not on all fours with *Wiegand*, which involved a defendant who directed and actively posed his victims.  *See Wiegand*, 812 F.2d at 1241; *see also Overton*, 573 F.3d at 689 (noting that the defendant "staged" and "directed" the photographs by shepherding the minor and telling her what to do and how to pose).  In contrast to *Wiegand*, here, because the videos were surreptitiously recorded, Boam did not actively participate in directing T.A. to pose nude other than by repeatedly instructing her to shower in the bathroom with the camera. Even so, *Wiegand*'s reasoning supports a finding of lasciviousness in this case.  In *Wiegand*, we focused on whether the images were presented so "as to arouse or satisfy [the photographer's] sexual cravings."   812 F.2d at 1244. Here, a rational jury could find that the overall contents of the videos reflect that Boam's intent in creating and possessing the videos was "to arouse or satisfy" his sexual desires.  *See id.*; *see also Arvin*, 900 F.2d at 1391 ("Where children are photographed, the sexuality of the depictions often is imposed upon them by the attitude of the viewer or photographer.").

Boam's reliance on our decision in *Perkins*, 850 F.3d at 1109, is also unpersuasive.  We held in *Perkins* that a nude

---

[11] For this reason and others, Boam's comparison to the First Circuit's decision in *United States v. Amirault* is inapt.  *See* 173 F.3d 28 (1st Cir. 1999).  There, the court explained that the circumstances of the relevant photograph's creation were "unknown."  *Id.* at 34.  Here, the government presented evidence about how and why Boam created the videos.

selfie taken by a teenage girl did not depict a lascivious exhibition of the girl's genitals, noting that the image lacked traits that would make it sexually suggestive. *Id.* at 1122. But the relevant image in that case had a shadow covering the girl's genitals, which appeared only in the "far bottom right-hand corner." *Id.* Here, T.A.'s genitals and pubic area were unobstructed and prominent in the videos. What is more, the *Perkins* court did not mention, let alone discuss, the sixth *Dost* factor in its analysis. Here, viewed in the light most favorable to the government, there is a striking amount of evidence that Boam produced the videos to elicit a sexual response. Accordingly, our decision is readily distinguishable from *Perkins*.

In sum, we conclude that the district court did not clearly err in finding that the videos could satisfy these three *Dost* factors. The government presented evidence that Boam directed T.A. to shower in a bathroom where he had hidden a camera, secretly filmed T.A. when she was nude, and curated a collection of nearly forty videos that displayed T.A.'s genitals or pubic area. Strengthening the government's case that Boam took these actions for his sexual pleasure, T.A. testified that Boam attempted to rape her a few months after recording the videos and raped her soon after that.

Viewing this evidence in the light most favorable to the government, we conclude that a rational jury could have found the videos to depict "sexually explicit conduct," as defined by 18 U.S.C. § 2256(2)(A)(v).

### 3. Out-of-Circuit Cases

Our caselaw steers us to the result in this case. But we note that our decision is in line with many of our sister circuits. In similar cases involving surreptitious bathroom

recordings that captured a minor's genitals or pubic area, the Second, Fifth, Seventh, Tenth, and Eleventh Circuits determined that such images could be lascivious exhibitions.

In *United States v. Spoor*, for example, the Second Circuit decided a jury could reasonably find that secretly recorded videos of boys urinating in a toilet and changing into swimsuits were lascivious exhibitions of the boys' genitals. 904 F.3d 146, 148–50 (2d Cir. 2018). With respect to the sixth *Dost* factor, the court relied in part on evidence that the defendant had previously sexually molested boys similar in age to the boys in the videos. *Id.* at 146–47, 150, 156.

And the Fifth Circuit, in *United States v. McCall*, held that the "sexually explicit conduct" element was met based on evidence that the defendant secretly recorded his niece showering in the family's shared bathroom. 833 F.3d 560, 561 (5th Cir. 2016). When concluding that the videos depicted lascivious exhibitions, the court noted evidence that the defendant's "documented sexual interest in children" had led him to make the recording. *Id.* at 564.

The Tenth Circuit reached a similar conclusion in *United States v. Wells*. 843 F.3d at 1254–57. There, the Tenth Circuit upheld a § 2251(a) conviction based on evidence that a defendant intentionally aimed a camera at his stepdaughter's shower and saved the nude footage of her. *Id.* Relying on our *Wiegand* decision, the Tenth Circuit explained that because lasciviousness is "not a characteristic of the child," it was "of no import" that the girl's behavior in the videos was "consistent with common bathroom activities." *Id.* at 1255 (citation omitted). In determining that the videos could reasonably satisfy the sixth *Dost* factor, the Tenth Circuit explained that the stepdaughter's

testimony that the defendant had sexually assaulted her "demonstrated [the defendant's] sexual desires." *Id.* at 1256–57.

The Eleventh Circuit similarly upheld a jury's conviction of a defendant who secretly videotaped his teenage stepdaughter "performing her daily bathroom routine," which resulted in videos that depicted her when she was nude. *United States v. Holmes*, 814 F.3d 1246, 1247 (11th Cir. 2016). The Eleventh Circuit held that "a lascivious exhibition may be created by an individual who surreptitiously videos or photographs a minor . . . even when the original depiction is one of an innocent child acting innocently." *Id.* at 1252.

Finally, the Seventh Circuit has also affirmed a § 2251(a) conviction based on evidence that the defendant secretly filmed minors undressing and showering. *Miller*, 829 F.3d at 522–23. Though the Seventh Circuit did not apply the *Dost* factors, it explained that a factfinder could consider the creator's intent in making the videos. *Id.* at 525–26. It was "clear" that the defendant in *Miller* had created the videos for sexual excitement, thereby supporting a finding of lasciviousness. *Id.* at 526.

Ignoring these analogous cases, Boam relies on out-of-circuit cases that he says support his position. They do not.

Boam, for example, relies upon the Fifth Circuit's decision in *Steen*. 634 F.3d at 822. In that case, the Fifth Circuit reversed a child-pornography conviction where the defendant had surreptitiously filmed a stranger, who turned out to be a sixteen-year-old girl, as she was getting into a tanning bed. *Id.* at 824. The resulting fifteen-second video showed the girl's pubic region on the right edge of the frame for approximately one-and-a-half seconds. *Id.* Applying the

*Dost* factors, the Fifth Circuit concluded the evidence was insufficient for a jury to find lasciviousness. *Id.* at 828. The focal point of the video was not the girl's genitals, and evidence indicated that the mere act of being a voyeur excited the defendant, not the content of the video. *Id.* But unlike the *Steen* video's passing glimpse of the girl's pubic region, the videos here distinctly captured T.A.'s genitals or pubic area for prolonged periods. Moreover, there is significant evidence here that the nude videos of T.A. were intended to elicit a sexual response in Boam. Besides, in citing to *Steen*, Boam overlooks the more similar and more recent Fifth Circuit decision in *McCall*, 833 F.3d at 561, discussed above.

Boam also points us to a recent D.C. Circuit case that held that similar videos were not lascivious exhibitions of a child's genitals. *See United States v. Hillie*, 39 F.4th 674, 692 (D.C. Cir. 2022). But there is no question that *Hillie* is incompatible with our caselaw; the D.C. Circuit explicitly rejected use of the *Dost* factors and our decision in *Wiegand*. *Id.* at 686–90. We, of course, are bound only by our precedent and that of the Supreme Court.[12]

---

[12] Boam also cites the Eighth Circuit's decision in *United States v. McCoy*, in which that court found insufficient evidence to support a § 2251(a) conviction where the defendant had secretly recorded two videos of his fifteen-year-old cousin before and after she showered. *See* 55 F.4th 658, 659–60 (8th Cir. 2022), *reh'g en banc granted, opinion vacated*, 2023 WL 2440852 (8th Cir. Mar. 10, 2023). *McCoy*, however, is no longer good law because the opinion was vacated after the Eighth Circuit decided to rehear the case en banc. *See United States v. McCoy*, 2023 WL 2440852, at *1 (8th Cir. Mar. 10, 2023). Regardless, we find the now-vacated decision unpersuasive both on the facts and the law. As to the facts, the hidden camera in *McCoy* was located inside a bathroom closet and only captured the minor "from a distance." 55 F.4th at 661. Not so here. As to the law, in determining that the videos were not

## IV.    Conclusion

Viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence to support Boam's convictions for attempted sexual exploitation of a minor in violation of 18 U.S.C. § 2251(a) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B).

***

**AFFIRMED.**

---

intended to elicit a sexual response in the viewer, the Eighth Circuit stressed its view that the proper inquiry under the sixth *Dost* factor was not "whether the videos were intended to appeal to the defendant's particular sexual interest," but instead "whether the videos, on their face, are of a sexual character." *Id.* As we see it, these considerations are not so easily untangled. Rather, a photographer's intent for an image to appeal to or "suit his peculiar lust" may in certain circumstances support a finding that the image is of a sexual character. *See Wiegand*, 812 F.2d at 1244.