**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

BRYCE TYRONE VERHONICH,

*Defendant - Appellant.*

No. 25-1407

D.C. No.
2:24-cv-02148-
JAD-DJA-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted January 7, 2026
San Francisco, California

April 7, 2026

Before: Ronald M. Gould, Jacqueline H. Nguyen, and Mark
J. Bennett, Circuit Judges.

Opinion by Judge Gould

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's order affirming Bryce Tyrone Verhonich's misdemeanor conviction and sentence for violating National Park Service Boating and Water Use Activities regulations in connection with a jet ski accident in which Verhonich was the driver and a passenger drowned.

Following a bench trial before a magistrate judge, Verhonich was found guilty of (1) negligent operation in violation of 36 C.F.R. § 3.8(b)(8); (2) failure to wear a personal flotation device in violation of 36 C.F.R. § 3.9(b)(a); and (3) failure to attach an engine cut-off switch lanyard in violation of 36 C.F.R. § 3.9(b)(2). The magistrate judge imposed a sentence of six months in custody and two years of probation.

Verhonich contended that evidence related to his failure to wear a life jacket or attach the engine cut-off lanyard to his wrist or body is irrelevant to his guilt or innocence on Count One because the plain meaning of "[o]perating a vessel," as used in 36 C.F.R. § 3.8(b)(8), concerns only Verhonich's "piloting of the jet ski, not external factors like safety gear." On this issue of first impression, the panel held that the failure to wear a life jacket and the failure to attach a safety lanyard may both be considered in determining

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

whether a vessel has been operated negligently pursuant to 36 C.F.R. § 3.8(b)(8).

The panel held that sufficient evidence supports Verhonich's conviction for Count One. Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found beyond a reasonable doubt that Verhonich failed to exercise the degree of care which a reasonable person, under like circumstances, would have demonstrated.

The panel held that Verhonich's challenge to the district court's admission of two surveillance videos as impermissible propensity evidence under Fed. R. Evid. 404(b) does not survive plain error review.

The panel held that the magistrate judge did not err at sentencing. The magistrate judge, who considered state vehicular-manslaughter cases and concluded that they were not persuasive, reasonably concluded that the factual underpinnings of the state court cases were distinct from Verhonich's case, and did not abuse his discretion by determining that the factors set out in 18 U.S.C. § 3553(a) weighed in favor of a custodial sentence.

## COUNSEL

Lauren Ibanez (argued), Edward D. Penetar, and Brian Y. Whang, Assistant United States Attorneys; Adam M. Flake, Appellate Chief, Assistant United States Attorney; Sigal Chattah, Acting United States Attorney; Office of the United States Attorney, United States Department of Justice, Las Vegas, Nevada; Peter H. Walkingshaw, Assistant United

States Attorney, Office of the United States Attorney, United States Department of Justice, Reno, Nevada; for Plaintiff-Appellee.

Nicholas Wolfram (argued) and Ellesse Henderson, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Las Vegas, Nevada; for Defendant-Appellant.

## OPINION

GOULD, Circuit Judge:

On June 30, 2022, Defendant-Appellant Bryce Tyrone Verhonich ("Verhonich") was the driver in a jet ski accident. Verhonich was rescued but his passenger, Lily Hatcher ("Hatcher"), drowned. Following a bench trial before a magistrate judge, Verhonich was found guilty of three misdemeanor counts in violation of National Park Service ("NPS") Boating and Water Use Activities regulations: (1) negligent operation in violation of 36 C.F.R. § 3.8(b)(8); (2) failure to wear a personal flotation device in violation of 36 C.F.R. § 3.9(b)(a); and (3) failure to attach an engine cut-off switch lanyard in violation of 36 C.F.R. § 3.9(b)(2). The magistrate judge imposed a sentence of six months in custody and two years of probation. The district court's order affirmed Verhonich's conviction and sentence, which he now appeals. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

On June 29, 2022, at around midnight, Verhonich met Hatcher and invited her to his houseboat, which was docked

at Lake Mead. At approximately 1:15 a.m. the next day, Verhonich and Hatcher arrived at the Lake Mead National Recreation Area boat harbor and boarded his neighbor's jet ski. At around 5:00 a.m., Verhonich and Hatcher left Verhonich's house boat and got back on the jet ski and headed to a shower facility on the other side of the lake. During this ride, Verhonich took a detour to show Hatcher the sunrise at Hoover Dam. That morning, Edwardo Estoy ("Estoy") was fishing from his kayak on Lake Mead when he found Verhonich in the water without a life jacket. Estoy helped Verhonich stay afloat and called 911. NPS rangers responded and rescued Estoy and Verhonich. The rangers then searched the area for Hatcher but did not locate her or any life jackets. During the search, the rangers encountered the jet ski, which still had the engine cut-off lanyard attached, and the engine was still running. When Ranger William Dentler ("Ranger Dentler") removed the engine cut-off lanyard from the jet ski, he did not notice any defect or malfunction with the lanyard. On July 6, 2022, Hatcher's body was discovered nearly 300 feet below the surface of Lake Mead. An autopsy revealed that Hatcher's cause of death was drowning with contributing factors of cocaine and methamphetamine use.

At a bench trial before a United States magistrate judge, the government introduced surveillance video from the courtesy dock at the Las Vegas Boat Harbor, from June 30, 2022, between 1:15 a.m. and 1:19 a.m., showing Verhonich and Hatcher on the jet ski pulling away from the dock without wearing lifejackets ("Exhibit 9A"). The government also introduced body camera footage from after Verhonich was rescued by rangers showing Verhonich departing on the jet ski without attaching the engine cut-off switch lanyard ("Exhibit 3"). The government called Estoy as a witness,

and he testified that he saw Verhonich driving the jet ski shortly before the accident. Estoy described the water conditions as "extremely choppy" and the wind as "howling." Estoy recalled seeing a jet ski "zoom by" in the distance. When he found Verhonich in the water, Estoy also noticed that Verhonich was not wearing the engine cut-off lanyard and that the engine on the jet ski was still running. Estoy did not see any life jackets in the water or any signs of Hatcher.

The defense called Verhonich as a witness. He testified that he set out, wearing a life jacket and the cut-off switch lanyard, in conditions that were "[n]ot choppy, but not calm." He testified that he initially traveled between thirty and thirty-five miles an hour but after conditions suddenly worsened, he slowed to between five and seven miles per hour to turn around for safety. He testified that while he was turning, "there was no wave that hit the jet ski" but also that "[t]he wave that hit the jet ski was -- when -- it sent it to a different trajectory on the lake" and "that's how we slid off the jet ski." During cross-examination, however, Verhonich testified that he told the investigators that he "kind of turned sharp on accident" causing him and Hatcher to fall off the jet ski into the water.

The defense called an expert witness, Captain Gregory M. Tylawsky ("Tylawsky"), a master unlimited of oceangoing vessels. Tylawsky testified that, based on his research, an adiabatic wind event occurred at Lake Mead on June 30, 2022. Tylawksy testified that these wind events occur when cool air comes over the cliffs surrounding the lake and falls to the surface of the water where it "creates very, very high winds and also creates a lot of spray and . . . high seas, because the air is very dense compared to the air over the water."

After the bench trial, Verhonich was found guilty of negligent operation of a vessel in violation of 36 C.F.R. § 3.8(b)(8) ("Count One"), failing to wear a personal floatation device in violation of 36 C.F.R. § 3.9(b)(1) ("Count Two"), and failing to attach an engine cut-off switch lanyard in violation of 36 C.F.R. § 3.9(b)(2) ("Count Three"). On November 5, 2024, the magistrate judge imposed a sentence of six months in custody for Counts One and Two, to be served concurrently, and two years of probation for Count Three.

Verhonich filed a notice of appeal to the district court on November 7, 2024, arguing his judgment should be vacated on three grounds: (1) the magistrate judge admitted improper propensity evidence; (2) insufficient evidence supported his conviction on Count One; and (3) the magistrate judge erred at sentencing. On February 28, 2025, the district court issued an order affirming the conviction and judgment of sentence.

## II.  STANDARD OF REVIEW

When a defendant timely moves for acquittal at the close of the government's case-in-chief in a bench trial, we review the district court's denial of a motion for acquittal based on sufficiency of the evidence under Rule 29 *de novo*. *United States v. Boam*, 69 F.4th 601, 606 (9th Cir. 2023).

We review admission of "other crimes" evidence for an abuse of discretion. *United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002). When a defendant does not timely raise an objection to the admission of the evidence, however, we review for plain error. *See United States v. Bracy,* 67 F.3d 1421, 1432 (9th Cir. 1995). To show plain error, a defendant "must show that (1) there was an error, (2) the error is clear or obvious, (3) the error affected his substantial

rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *See United States v. Johnson,* 979 F.3d 632, 636 (9th Cir. 2020). Here, Verhonich failed to timely object to the admission of the challenged evidence at trial and raises his Rule 404(b) arguments for the first time on appeal. Accordingly, plain error review applies.

We review for abuse of discretion whether the sentencing court relied on improper evidence. *United States v. Franklin*, 18 F.4th 1105, 1117 (9th Cir. 2021). When a defendant does not raise an objection to his sentence before the district court, however, we review for plain error. *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009). "Even in the absence of an objection, we review the substantive reasonableness of a sentence for abuse of discretion." *United States v. Avendano-Soto*, 116 F.4th 1063, 1066 (9th Cir. 2024). Here, Verhonich did not raise an objection to the magistrate judge referring to his anecdotal experience[1] during the sentencing hearing, so we review that challenge for plain error. Verhonich's claim as to substantive reasonableness of his sentence is reviewed for abuse of discretion.

## III.   DISCUSSION

### A.  Statutory Meaning of 36 C.F.R. § 3.8(b)(8)

In reviewing the sufficiency of evidence following a bench trial, we consider "whether, after viewing the evidence in the light most favorable to the prosecution, *any*

---

[1] At sentencing, the magistrate judge referred to his personal anecdotal experience by stating "my anecdotal experience[] in State Court for over 30 years is that when negligence or the actions of somebody causes a death, it does lead to incarceration."

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Laney*, 881 F.3d 1100, 1106 (9th Cir. 2018) (quoting *United States v. Atkinson*, 990 F.2d 501, 502–03 (9th Cir. 1993) (emphasis in original)).

In the present case, the applicable NPS regulation provides:

> The following operations are inherently unsafe and therefore prohibited…[o]perating a vessel, or knowingly allowing another person to operate a vessel in a negligent manner, by failing to exercise that degree of care which a reasonable person, under like circumstances, would demonstrate in order to prevent the endangering of the life, limb, or property of a person(s) through the operator's lack of knowledge, inattention, or general carelessness.

36 C.F.R. § 3.8(b)(8). Verhonich contends that evidence related to his failure to wear a life jacket or attach the engine cut-off lanyard to his wrist or body is irrelevant to his guilt or innocence on Count One because the plain meaning of "[o]perating a vessel," as used in 36 C.F.R. § 3.8(b)(8), "concerns only Mr. Verhonich's piloting of the jet ski, not external factors like safety gear." This is an issue of first impression, and so we address it before turning to the application of this provision.

"It is a maxim of statutory construction that unless otherwise defined, words should be given their ordinary, common meaning." *Foxgord v. Hischemoeller,* 820 F.2d 1030, 1032 (9th Cir. 1987). Here, the meaning of "operate"

is not defined in the statute.  Black's Law Dictionary defines "operate" as "[t]o direct, put into action, or maintain the functioning of, esp[ecially] by direct personal effort; to engage, use, and control (a machine, computer, equipment, etc.)."  *Operate, Black's Law Dictionary* (12th ed. 2024). We are not persuaded that the act of maintaining the functioning of, or engaging, using, and controlling, a jet ski, plainly excludes external factors that impact the nature of the maintenance or use, such as safety gear.  In particular, removing the safety lanyard entirely halts the operation of the vessel and therefore is encompassed by "operate," even under Verhonich's narrow definition to mean only piloting the jet ski itself.

A broader construction of the plain meaning of "operate" is strengthened by a consideration of the statutory context. *See Alexander Mfg., Inc. Emp. Stock Ownership Plan & Tr. v. Illinois Union Ins. Co.*, 560 F.3d 984, 987 (9th Cir. 2009) ("If the phrase in question has more than one plausible interpretation, the court must then examine the context in which the phrase is used and the broader context of the policy as a whole").  Verhonich cites five of the preceding subsections of 36 C.F.R. § 3.8(b) to support his statutory interpretation, which he contends "exclusively describe piloting the vehicle."

The Supreme Court has said "when a general term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration."  *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991).**[2]**  As the

---

[2] This general principle has long been known by the Latin phrase "*esjusdem generis." See Ejusdem Generis, Black's Law Dictionary* (12th ed. 2024).

district court concluded, however, "the preceding subsections do not relate only to the act of driving a vessel, but encompass external situations that would make driving the vessel inherently unsafe." For example, section 3.8(b)(6) prohibits "[o]perating a power-driven vessel while a person is riding on the decking over the bow, gunwales, top edge of the transom, motor cover, or in any other unsafe position when the vessel is being operated," and section 3.8(b)(7) prohibits "[o]perating a power driven vessel engine/s or generator with a person sitting, riding or hanging on to a swim platform or swim ladder." 36 C.F.R. § 3.8(b). The district court correctly concluded that Verhonich did not "distinguish driving a watercraft while passengers are sitting in dangerous positions from driving one while passengers aren't wearing personal-flotation devices."

Verhonich also contends that by including only two passenger-specific examples of unsafe circumstances, the regulation purposely excluded other passenger specific circumstances from section 3.8(b)'s ambit. *See Esteras v. United States*, 606 U.S. 185, 195 (2025) ("[E]xpressing one item of [an] associated group or series excludes another left unmentioned"). We are not persuaded by this argument under the circumstances presented here, because the language, "[o]perating a vessel, or knowingly allowing another person to operate a vessel in a negligent manner, by failing to exercise that degree of care which a reasonable person . . . would demonstrate," is more general than the preceding sections discussed above. So, interpreting section 3.8(b)(8) as prohibiting only the specific activities listed beforehand would render the provision meaningless. "It is an accepted canon of statutory interpretation that we must interpret the statutory phrase as a whole, giving effect to each word and not interpreting the provision so as to make

other provisions meaningless or superfluous." *United States v. 144,774 pounds of Blue King Crab,* 410 F.3d 1131, 1134 (9th Cir. 2005).

Finally, that wearing life jackets and attaching cut-off switch lanyards are conditions of operation of personal watercraft, a specific category of vessels, in a succeeding provision, s*ee* 36 C.F.R. §§ 3.9(b)(1)–(2), is of no consequence, because section 3.8 governs the broader category of vessel operations. *See* 36 C.F.R. § 1.4 (defining vessel and personal watercraft). Individuals operating personal watercraft must comply with both provisions.

Accordingly, we hold that the failure to wear a life jacket and the failure to attach a safety lanyard may both be considered in determining whether a vessel has been operated negligently pursuant to 36 C.F.R. § 3.8(b)(8).

## B. Sufficient evidence supports Verhonich's conviction for Count One

The government's evidence established that Verhonich operated a jet ski without securing the engine cut-off lanyard while he and Hatcher were not wearing life jackets and that Verhonich was operating the jet ski at a high rate of speed and in rough water conditions. Critically, Verhonich admitted that he made a careless turning maneuver when he told investigators that he "turned the wheel wrong" and that he "kind of turned sharp on accident." This turn caused Verhonich and Hatcher to fall from the jet ski into the water.

Viewing the evidence in the light most favorable to the government, a rational trier of fact could have found that Verhonich failed to exercise the degree of care which a reasonable person, under like circumstances, would have demonstrated  beyond a reasonable doubt, so sufficient

evidence supports Verhonich's conviction for negligent operation.

## C. Verhonich's Rule 404(b) challenge does not survive plain error review

Verhonich challenges the district court's admission of two surveillance videos, Exhibit 9A and Exhibit 3, as impermissible propensity evidence under Rule 404(b). *See* Fed. R. Evid. 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

As for the admission of Exhibit 9A, the magistrate judge did not err because the surveillance footage showing that Verhonich and Hatcher did not have life jackets upon boarding the jet ski, and so could not have been wearing life jackets at the time of the accident, is inextricably intertwined with Count Two, failure to wear a personal flotation device, and thus could be admitted without Rule 404(b) notice. *See United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) (holding "evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined'") (internal citation omitted).

As for Exhibit 3, Verhonich has not shown that its admission affected his substantial rights because there is overwhelming evidence that Verhonich did not attach the safety lanyard: the rangers encountered the jet ski after the accident, the engine cut-off lanyard was still attached to the jet ski, and the engine was still running. Moreover, Ranger Dentler testified that when he removed the engine cut-off lanyard from the jet ski, he did not notice any defect or

malfunction with the lanyard, and that the design and function of engine cut-off lanyards contradict Verhonich's claim that the lanyard came off his wrist during the accident. *See United States v. Morfin,* 151 F.3d 1149, 1151 (9th Cir. 1998) (concluding that error did not affect the defendant's substantial rights because the evidence against the defendant was "overwhelming").

### D.  The magistrate judge did not err at sentencing

The magistrate judge here considered state vehicular-manslaughter cases and concluded that they were not persuasive for several reasons.  The magistrate judge observed that courts are not required to compare state and federal sentences in felony cases and stated that he did not believe misdemeanors should be treated differently.  The magistrate judge also reasonably concluded that the "factual underpinnings" of the state court cases were distinct from Verhonich's case.  While the magistrate judge referred to his experience in state court at sentencing, the magistrate judge did not accept Verhonich's sentencing disparity argument for a variety of independent reasons and imposed the custodial sentence after considering the sentencing factors set out in 18 U.S.C. § 3553(a).[3]  The magistrate judge did not abuse his discretion by determining that those factors weighed in favor of a custodial sentence.  *See United States v. Ressam,* 679 F.3d 1069, 1089 (9th Cir. 2012) (holding a sentence is reasonable when "the record as a whole reflects

---

[3] Section 3553(a) requires courts to consider several factors including "the nature and circumstances of the offense and the history and characteristics of the defendant[,]" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense" and "to afford adequate deterrence to criminal conduct."  18 U.S.C. §§ 3553(a)(1)–2.

rational and meaningful consideration of the factors enumerated in" Section 3553(a)).

**AFFIRMED.**